ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| IN RE: LUIS MANUEL IRIZARRY PABÓN ALCALDE, MUNICIPIO AUTÓNOMO DE PONCE<br><br>Parte Recurrente<br><br>v.<br><br>OFICINA DEL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE<br><br>Parte Recurrida | KLRA202300572 | *Revisión Judicial,* procedente de la Oficina del Panel sobre el Fiscal Especial Independiente<br><br>Caso Núm.: UPAD-2023-0038<br><br>(Proveniente de la UPAD Caso Núm. Q 2023-060)<br><br>Sobre: Suspensión Sumaria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

Compareció ante este Tribunal la parte recurrente, Luis Manuel Irizarry Pabón (en adelante, "Irizarry Pabón" o el "Recurrente"), mediante recurso de revisión judicial y "**Moción en Auxilio de Jurisdicción**", ambos presentados el 3 de noviembre de 2023. Nos solicitó la revocación de la *Resolución* emitida por el Panel sobre el Fiscal Especial Independiente (en adelante, el "Panel"), el 1 de noviembre de 2023. Mediante el referido dictamen, el Panel acogió el *Informe y Recomendación al Panel* (en adelante, el "Informe") suscrito por la directora de la Unidad de Procesamiento Administrativo Disciplinario de dicha entidad gubernamental, Lcda. Melanie Grandoné Godreau.

**Por los fundamentos que expondremos a continuación, *confirmamos* la *Resolución* recurrida en cuanto se impone la medida cautelar de suspensión de empleo al Recurrente** y se devuelve el caso al Panel para la celebración de la vista administrativa, de conformidad con la reglamentación aplicable. De otra parte, *desestimamos* el recurso en lo

Número Identificador
SEN2023_____

relacionado a los argumentos esgrimidos ante nuestra consideración sobre la medida de suspensión de salarios, plan médico y otros beneficios económicos, por haberse presentado prematuramente.

## I.

El presente recurso tiene su génesis el 31 de octubre de 2023, fecha en que se presentaron cuatro (4) denuncias en contra de Irizarry Pabón ante el Tribunal de Primera Instancia, Sala Municipal de Ponce (en adelante, "TPI"), por violaciones al Artículo 251 de la Ley Núm. 146-2012, según enmendada, conocida como el "Código Penal de Puerto Rico de 2012", 33 LPRA sec. 5342 y al Artículo 4.2 (b) de la Ley Núm. 1-2012, según enmendada, conocida como la "Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico". En esa misma fecha, el TPI determinó causa probable para arresto en contra del Recurrente en todos los cargos presentados por la Oficina sobre el Fiscal Especial Independiente (en adelante, la "OPFEI").

Luego de dicha determinación, en horas de la tarde, la UPAD presentó el Informe ante el Panel mediante el cual recomendó que se procediera con la suspensión sumaria inmediata de empleo y sueldo de Irizarry Pabón, como medida cautelar mientras finalizaba el procedimiento penal iniciado en su contra y, a su vez, se considerara la suspensión de cualquier otro beneficio económico que éste percibiera. Entendió la UPAD que existía causa suficiente para creer que el Recurrente había cometido delito grave, delito contra la función pública y el erario o delito menos grave que implica depravación moral.

Así pues, el 1 de noviembre de 2023, el Panel emitió una *Resolución* en la cual acogió el Informe. Como consecuencia, suspendió sumariamente al Recurrente de sus funciones como alcalde del Municipio Autónomo de Ponce, con efectividad inmediata. Además, se le ordenó que entregara todos los bienes muebles municipales en su poder y se le prohibió tener acceso o intervenir por sí o mediante terceros con documentos o efectuar gestiones o tomar decisiones en el ayuntamiento. Igualmente, se le

proscribió personarse en cualquiera de las instalaciones o dependencias del Municipio hasta tanto se dispusiera finalmente del proceso.

De igual forma, se le ordenó a Irizarry Pabón a que mostrara causa por la cual no se le debía suspender de salario, así como del plan médico o cualquier otro beneficio económico que percibía como parte de sus funciones como alcalde. Para ello, se le concedió hasta las 2:00 de la tarde del 3 de noviembre de 2023, apercibiéndolo de que, de no recibir comunicación sobre el asunto, se procedería a decretar la suspensión inmediata de todo beneficio económico.

Inconforme con tal proceder, el Recurrente presentó una solicitud de auxilio de jurisdicción en unión al recurso de revisión judicial que nos ocupa. Le imputó al Panel la comisión de los siguientes errores:

**PRIMER ERROR:**

**ERRÓ LA OPFEI AL SUSPENDER SUMARIAMENTE AL ALCALDE MEDIANTE UNA RESOLUCIÓN QUE ADOLECE DE FALTA DE NOTIFICACIÓN ADECUADA CONFORME AL PROPIO REGLAMENTO DE LA UPAD SOBRE LOS REMEDIOS QUE LE ASISTEN.**

**SEGUNDO ERROR:**

**ERRÓ LA OPFEI AL PRETENDER SUSPENDER SUMARIAMENTE EL SALARIO Y DEMÁS BENEFICIOS AL ALCALDE EN VIOLACION AL REGLAMENTO 9124.**

**TERCER ERROR**

**ERRÓ EL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE AL DECRETAR LA SUSPENSIÓN SUMARIA DEL ALCALDE EN CRASO INCUMPLIMIENTO CON EL ESTÁNDAR DE PRUEBA, CLARA, ROBUSTA Y CONVINCENTE EXIGIDO POR EL ARTÍCULO 14 DE LA LEY NÚM. 2-1988, 3 LPRA § 99T-1, Y EL ARTÍCULO 1.8 DEL REGLAMENTO DE LA UNIDAD DE PROCESAMIENTO ADMINISTRATIVO DISCIPLINARIO, NÚM. 9124.**

**CUARTO ERROR**

**ERRÓ EL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE AL DECRETAR LA SUSPENSIÓN SUMARIA DEL ALCALDE EN VIOLACION A LOS CRITERIOS EXIGIDOS POR EL ARTÍCULO 14 DE LA LEY NÚM. 2-1988, _ANTE,_ POR LO QUE DICHO DICTAMEN NO ES MERECEDOR DE DEFERENCIA JUDICIAL.**

Mediante _Resolución_ de 3 de noviembre de 2023, declaramos "No Ha Lugar" la "**Moción en Auxilio de Jurisdicción**" y le concedimos un término a la OPFEI para que presentara su alegato en oposición. Tras

conceder una prórroga, la Recurrida presentó su "**Alegato al Recurso de Revisión Judicial y Solicitud de Desestimación**" el 9 de noviembre de 2023. Al día siguiente, Irizarry Pabón presentó "**Solicitud de Prórroga y de Desglose**". El 13 de noviembre de 2023, el Panel presentó "**Urgente Oposición a 'Solicitud de Prórroga y de Desglose'**".

Estando el caso perfeccionado para su disposición final y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de

derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec.

9675. Sin embargo, esto no significa que, al ejercer nuestra función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

La Asamblea Legislativa aprobó la Ley Núm. 2 de 23 de febrero de 1988, según enmendada, conocida como "Ley de la Oficina del Panel sobre el Fiscal Especial Independiente", 3 LPRA sec. 99h *et seq.* (en adelante, "Ley Núm. 2 de 1988" o "Ley del FEI"), mediante la cual se creó la figura externa del Fiscal Especial Independiente (en adelante, "FEI") ante la necesidad y con el fin de que "**se realizaran investigaciones completas y objetivas en las que se eliminaran las posibles situaciones de conflicto de intereses entre los investigadores e investigados**". Pueblo v. Maldonado, 2023 TSPR 114, 212 DPR ___ (2023) (énfasis en el original). En específico, para investigar y procesar criminalmente, por vía de

excepción, a empleados y altos funcionarios del Gobierno como el gobernador, los jueces, jefes de agencias y **alcaldes**, entre otros. *In re Invest. ex Alcalde Vega Alta*, 158 DPR 666, 672 (2003). Al respecto, el Artículo 4 de la Ley Núm. 2 de 1988 le otorga la facultad al Secretario del Departamento de Justicia de realizar investigaciones preliminares a dichos funcionarios públicos cuando reciba información bajo juramento "que, a su discreción, constituya causa suficiente para investigar si se ha cometido cualquier delito grave y menos grave incluido en la misma transacción o evento, o cualquier delito contra los derechos civiles, la función pública o el erario, por algún funcionario público allí mencionado". Pueblo v. Maldonado, *supra.* En fin, se le encomendó al FEI "la responsabilidad de acudir a los tribunales cuando hay causa para creer que un funcionario público ha cometido o perpetrado actos ilegales contra el patrimonio del Estado". Pueblo v. Navarro Alicea, 138 DPR 511, 517 (1995).

A tenor con tal propósito, y mediante el Plan de Reorganización Núm. 1-2012, que enmendó la Ley del FEI, se creó la UPAD con el objetivo de recomendar el curso de acción a seguir en los procesos disciplinarios en contra de alcaldes o alcaldesas en determinadas circunstancias. En lo aquí pertinente, el Artículo 14(1)(a) de la Ley del FEI dispone que la UPAD intervendrá:

> Cuando se ha encontrado causa para arresto por delito grave y los delitos contra la función pública y el erario; o delito menos grave que implique depravación moral en contra de un Alcalde o Alcaldesa al amparo de la Regla 6 de las de Procedimiento Criminal de Puerto Rico. Si el Panel determina que el interés público así lo requiere, podrá comenzar un proceso para determinar si la magnitud de los cargos imputados requieren la suspensión de empleo del Alcalde o Alcaldesa, hasta que concluya el proceso judicial en su contra. La celebración del proceso estará a cargo de la UPAD, la cual, en un término no mayor de veinte (20) días, contado a partir de la fecha de la determinación de causa para arresto, deberá notificar al Panel un informe con sus recomendaciones. Además, se faculta al Panel para que proceda de igual forma cuando reciba notificación de que a un Alcalde o Alcaldesa se le ha acusado por alguno de dichos delitos ante el Tribunal Federal. Al hacer la evaluación, la UPAD y el Panel considerarán lo siguiente:
>
> (i) si los hechos imputados al Alcalde o Alcaldesa demuestran una administración corrupta, fraudulenta, negligencia inexcusable o el abuso de autoridad;
> (ii) el historial administrativo previo del Alcalde o Alcaldesa;

(iii) la notoriedad o conocimiento público que se le imputa al Alcalde o Alcaldesa previo a la presentación de los cargos;

(iv) la certeza o peso de la prueba, según surja de los informes investigativos sobre los hechos que dieron lugar a la querella;

(v) la urgencia de tomar medidas que protejan los bienes municipales o la vida y salud de los ciudadanos; y

(vi) la íntima vinculación de los hechos imputados a la administración del municipio.

Aquilatada la recomendación de la UPAD, el Panel emitirá su resolución en cuanto a la suspensión de empleo del Alcalde o Alcaldesa, en un término no mayor de cinco (5) días laborables, contado a partir del recibo del informe de la UPAD. 3 LPRA sec. 99t-1.

Así pues, en virtud de los poderes conferidos por la Ley Núm. 2 de 1998, la OPFEI adoptó el Reglamento Núm. 9124 de 14 de noviembre de 2019, conocido como el "Reglamento de la Unidad de Procesamiento Administrativo Disciplinario" (en adelante, "Reglamento Núm. 9124"). El mismo establece las normas y procedimientos en cuanto al recibo, presentación, investigación, evaluación, adjudicación, revisión y cumplimiento de los casos ante la UPAD. Artículo 1.4 del Reglamento Núm. 9124, *supra*.

El Artículo 3.1 del Reglamento Núm. 9124 le confiere la facultad al Panel para suspender de empleo, o de empleo y salario a cualquier alcalde, alcaldesa o funcionario municipal electo cuando se ha hallado causa probable para iniciar una acción penal o se ha presentado acusación, se ha emitido un fallo de culpabilidad o se ha dictado sentencia por cualquier delito grave, delito contra la función pública y el erario o delito menos grave que implique depravación moral. De igual manera, la aludida disposición reglamentaria dispone lo siguiente:

El [Panel] tiene facultad para suspender sumariamente de empleo, o de empleo y salario a un Alcalde, Alcaldesa o Funcionario Municipal Electo hasta que concluya el proceso judicial o administrativo disciplinario ante la UPAD en su contra, si el Panel determina que el interés público así lo requiere. En los casos que así lo resuelva dispondrá para la celebración de una vista requerida por el debido proceso de ley.

[…]

El Panel mantendrá su jurisdicción en casos en que iniciada la acción disciplinaria el Alcalde, Alcaldesa o Funcionario Municipal Electo presente su renuncia. Íd.

En consonancia con lo anterior, el Artículo 5.1 del precitado Reglamento dispone que en aquellos casos en que el Panel reciba una notificación de que se ha determinado causa probable para el arresto o citación en contra de un alcalde o funcionario municipal electo, se le proveerá a la UPAD aquellos documentos recibidos para evaluación y subsiguiente presentación de un informe en el cual se pueda efectuar una recomendación para la acción a seguir. Artículo 5.1 del Reglamento Núm. 9124, *supra*. Asimismo, la UPAD determinará "si la magnitud de los hechos alegados requiere –como medida cautelar– la suspensión sumaria de empleo o la suspensión sumaria de empleo y salario del funcionario". Íd.

Al respecto, dicho cuerpo reglamentario provee los criterios a considerar para determinar si el interés público requiere la suspensión sumaria de empleo, suspensión sumaria de empleo y salario, así como suspensión de empleo, suspensión de empleo y salario o destitución. Artículo 5.5 del Reglamento Núm. 9124, *supra*. El mismo indica que tan solo uno de los siguientes criterios puede constituir causa suficiente para emitir la sanción, ya sea como medida cautelar o como medida disciplinaria:

a. si los hechos imputados al Alcalde, Alcaldesa o Funcionario Municipal Electo demuestran una administración corrupta, fraudulenta, negligencia inexcusable o el abuso de autoridad;
b. el historial administrativo previo del Alcalde, Alcaldesa o Funcionario Municipal Electo;
c. la notoriedad o conocimiento público que lo que se le imputa al Alcalde, Alcaldesa o Funcionario Municipal Electo previo a la presentación de los cargos;
d. la certeza o peso de la prueba, según surja de los informes investigativos sobre los hechos que dieron lugar a la querella;
e. la urgencia de tomar medidas que protejan los bienes municipales o la vida y salud de los ciudadanos; y
f. la íntima vinculación de los hechos imputados a la administración del municipio. Íd.

Por último, en los casos de suspensión o destitución antes mencionados, la decisión del Panel será efectiva desde la misma fecha en que se le notifique al querellado. Art. 5.6 del Reglamento Núm. 9124, *supra*. En lo relativo a la suspensión sumaria de empleo, el Artículo 2.1(33) define ésta como:

Decisión del Panel de relevar al funcionario municipal electo de sus funciones –como medida cautelar– mientras se culmina un proceso criminal en su contra o, se concluye un

proceso ante la UPAD. En interés del bien público y en protección de los bienes municipales, el Panel podrá imponer que la suspensión sumaria incluya la suspensión de salario. Artículo 2.1(33) del Reglamento Núm. 9124, *supra.*

Sobre el particular, el mencionado Artículo también dispone que "se le concederá una vista administrativa dentro de las 24 horas laborables siguientes a haberse decretado la suspensión de empleo". Íd. De igual forma, el mismo establece que "[p]revio a decretar la suspensión de salario, se deberá conceder una vista administrativa, con el propósito de que el funcionario sancionado tenga la oportunidad de expresar la razón o fundamento por el cual considere que no deberá privársele de su salario". Íd.

### C.

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. Cobra Acquisitions, LLC v. Municipio de Yabucoa y otros, 210 DPR 384 (2022); Pueblo v. Ríos Nieves, 209 DPR 264, 273 (2022); Metro Senior v. AFV, 209 DPR 203 (2022).

Reiteradamente, se ha expresado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no tenemos discreción para asumir jurisdicción donde no la hay. Pueblo v. Ríos Nieves*, supra*, pág. 273*;* Pérez Soto v. Cantera Pérez, Inc., *et al.*, 188 DPR 98, 104-105 (2013). De igual manera, es conocido que la ausencia de jurisdicción no puede ser subsanada por las partes. Pueblo v. Ríos Nieves*, supra*; Pérez Soto v. Cantera Pérez, Inc.*, et al.*, *supra*. Por consiguiente, las cuestiones relacionadas a la jurisdicción de un tribunal son privilegiadas y deben atenderse y resolverse con preferencia a cualquier otra. Íd. Por ello, cuando un tribunal emite una sentencia sin tener jurisdicción sobre las partes o la materia, su dictamen es uno inexistente o *ultravires.* Maldonado v. Junta de Planificación, 171 DPR 46, 55 (2007). Por ello, al carecer de jurisdicción o autoridad para considerar un recurso, lo único que procede en Derecho es la desestimación de la causa de acción. Romero Barceló v. E.L.A., 169 DPR 460, 470 (2006); Carattini v. Collazo Syst. Analysis, Inc., 158 DPR 345, 370 (2003).

Así pues, estamos imposibilitados de atender recursos prematuros o tardíos. En lo particular, un recurso prematuro es aquel que se presenta en la Secretaría de un tribunal apelativo antes de que este adquiera jurisdicción. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). En virtud de ello, carece de eficacia y no produce efectos jurídicos. Íd., págs. 97-98. Siendo ello así, un recurso presentado prematuramente adolece de un defecto insubsanable que sencillamente priva de jurisdicción al tribunal que se recurre, pues al momento de su presentación no existe autoridad judicial para acogerlo. Carattini v. Collazo Syst. Analysis, Inc., *supra*, pág. 370.

Cónsono con lo anterior, este Tribunal de Apelaciones puede desestimar, *motu propri*o, un recurso por falta de jurisdicción. Regla 83(B)(1) y (C) de Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Sin embargo, la desestimación de un recurso por prematuro le permite a la parte recurrente volver a presentarlo una vez el foro apelado resuelva lo que tenía ante su consideración o cumpla con los rigores que dispone nuestro ordenamiento sobre una efectiva notificación de un dictamen. *Véase*, Pueblo v. Ríos Nieves, *supra*, pág. 275*;* Yumac Home v. Empresas Massó, 194 DPR 96 (2015).

**III.**

Primeramente, atendemos el asunto jurisdiccional traído ante nuestra consideración por parte del Panel. En esencia, este último arguye que el recurso ante nos debe ser desestimado por haberse tornado académico. Apoya su contención en que del expediente administrativo surgen una Certificaciones expedidas por distintos funcionarios del Municipio Autónomo de Ponce el 1 de noviembre de 2023. Específicamente, arguye que de una de éstas surge que presuntamente se expidió un pago global de licencia acumulada por concepto de vacaciones de Irizarry Pabón por la cantidad de $25,225.70. A base de lo anterior, y fundamentada en las disposiciones del Artículo 2.058 (k) de la Ley Núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico", el Panel sostiene que como dicho Artículo contempla el pago

global por licencia de vacaciones hasta un máximo de 60 días cuando el empleado municipal renuncia a su puesto o al separársele definitivamente del servicio público, debemos entender que el Recurrente ha renunciado a su puesto de Alcalde del Municipio.

En primer término, la interpretación que efectúa el Panel requiere que asumamos un hecho sin contar con prueba que demuestre la renuncia de Irizarry Pabón. Es decir, se plantea que el recurso se ha tornado académico porque se desprende del expediente una Certificación en la cual se expresa que alegadamente el Municipio de Ponce le efectuó un pago global por concepto de licencia de vacaciones acumuladas por el Recurrente y como ello ocurre ante la renuncia o separación definitiva del servicio público, debemos concluir que Irizarry Pabón renunció. Sin embargo, no se desprende de los autos la carta de renuncia del Recurrente o cualquier otra prueba fehaciente que establezca dicho hecho.

Además, el Artículo 3.1 del Reglamento 9124, *supra*, establece taxativamente que el Panel retendrá jurisdicción en los casos en que se inicie el procedimiento disciplinario y el alcalde presente su renuncia al puesto. Siendo ello así, es claro que, bajo dichas circunstancias, tanto el Panel como este Tribunal mantiene su facultad revisora ante la renuncia de un alcalde, alcaldesa o funcionario municipal electo. Por tanto, no procede la desestimación del recurso por academicidad.

**Ahora bien, relacionado con el argumento traído a nuestra atención por el Panel a base de la Certificación con el timbrado del Municipio Autónomo de Ponce y suscrita por el Sr. Michael R. Pérez Hernández, Director de la Oficina de Recursos Humanos, Sra. Frances M. Reyes Vargas, Asistente Administrativo V de la Unidad de Nóminas y por la Sra. Marlese A. Sifre Rodríguez, Alcaldesa Interina, no podemos pasar por alto la gran preocupación que nos genera el hecho de que presuntamente el Municipio Autónomo de Ponce emitió un pago global por concepto de licencia de vacaciones acumulada a favor de Irizarry Pabón por la cantidad de $25,225.70, cuando ya se había emitido la *Resolución* recurrida mediante la cual se le suspendió**

**sumariamente de empleo como medida cautelar. De comprobarse que, en efecto, se efectuó un desembolso de dinero a la fecha en que el Panel había tomado su decisión a raíz de la determinación de causa probable para arresto, somos de la opinión que la misma podría constituir una irregularidad en el manejo de fondos públicos y tiene visos de ilegalidad**.

Establecido lo anterior, y sobrepasado el escollo jurisdiccional planteado, analicemos la procedencia de las controversias presentadas por Irizarry Pabón en el recurso que nos ocupa.

En su primer señalamiento de error, el Recurrente sostiene que el dictamen recurrido adolece de falta de notificación adecuada, conforme las disposiciones del Reglamento 9124, *supra*. Expone que el mismo provee para la celebración de una vista administrativa, al amparo del Artículo 2.1 (33), luego de la suspensión sumaria de empleo.

De entrada, debemos establecer que no existe controversia sobre la potestad que poseía el Panel para imponer la medida cautelar de suspensión sumaria de empleo. En segundo término, no nos cabe duda alguna de que, acorde con las disposiciones jurídicas citas en los acápites anteriores, el Panel tenía la autoridad en ley para así imponerla. Ahora bien, no creemos que la *Resolución* impugnada en el recurso contenga una deficiencia en su notificación, simplemente no se le citó a la vista administrativa que provee el Reglamento Núm. 9124, *supra*.

Sobre el particular, no podemos perder de perspectiva que el debido proceso de ley "no requiere que haya una vista previa a toda privación de un derecho o interés propietario". Vélez Ramírez v. Romero Barceló, 112 DPR 716, 730 (1982). Adviértase que **"[c]uando hay una privación <u>temporal</u> basta que en algún momento significativo u oportuno el afectado tenga la oportunidad de defenderse y presentar su caso en un proceso con adecuadas garantías"**. Íd. (énfasis suplido). Ello está cimentado en que existen circunstancias que requieren la intervención inmediata del Estado porque media un interés del tal envergadura que

justifica la intromisión temporera con la propiedad o libertad de una persona **antes** de que se le brinde la oportunidad de ser oído. Íd.

De hecho, en su alegato en oposición, el Panel no se niega a la celebración de una vista administrativa. Ante nos, el Recurrido solicitó que, si concluyéramos que las controversias no se han tornado académicas, le concedamos la oportunidad al Panel para que considere los planteamientos esgrimidos por Irizarry Pabón en su "**Oposición a Suspensión de Salarios**" que presentó a tan solo ocho (8) minutos de radicar el recurso de autos. Habiendo sido la suspensión sumaria de empleo del Recurrente una medida cautelar y temporal impuesta legítimamente por el Panel, procede conceder la solicitud de este último y devolver el caso para que se celebre la vista administrativa que disponen los Artículos 2.1 (33) y 3.1 del Reglamento Núm. 9124, *supra*. **No obstante, debe quedar meridianamente claro de que somos del criterio de que actuó correctamente el Panel al disponer de la medida cautelar de suspensión sumaria de empleo de Irizarry Pabón. Tanto la Ley del FEI como la reglamentación aplicable así lo validan, tras la determinación de causa de probable para arresto del TPI que recayó en contra del Recurrente**.

La suspensión sumaria, como medida cautelar, "pretende proteger al municipio contra una administración de los fondos y bienes públicos fraudulenta, corrupta e irresponsable y del abuso de los poderes inherentes al cargo de alcalde". Vélez Ramírez v. Romero Barceló, *supra*, pág. 735. **Nuestro Tribunal Supremo ha reconocido que existen situaciones en donde el interés estatal protegido es de tal intensidad, envergadura y naturaleza que hace innecesaria la celebración de una vista previa antes de imponer una medida cautelar. Una de estas instancias lo es la determinación de causa probable para arrestar**. Íd., págs. 735-736. En el balance de los intereses en disputa, pesa en nuestra conclusión el puesto que ocupa Irizarry Pabón, las actuaciones imputadas, la administración de los fondos públicos y el derecho reglamentario que éste

ostenta a que se celebre una vista administrativa en donde se dilucide la procedencia de las medidas impuestas.

Así pues, y a tono con nuestra determinación de devolver el caso a la consideración del Panel para la celebración de la vista administrativa, se hace innecesario evaluar el tercer y cuarto señalamiento de error expuesto por Irizarry Pabón, toda vez que ambos versan sobre asuntos que se deben plantear ante nos luego de que al Recurrente se le dé la oportunidad de ser oído y se tome una determinación final sobre la medida cautelar impuesta y si procede la suspensión de salario y beneficios económicos, de conformidad con la *Resolución* recurrida mientras esté pendiente el proceso criminal iniciado en su contra.

En cuanto al segundo señalamiento de error, debemos hacer un breve recuento de los trámites procesales y fácticos que desembocaron en la presentación del recurso que nos ocupa.

Mediante la *Resolución* del 1 de noviembre de 2023, el Panel le concedió a Irizarry Pabón un término a vencer en o antes del 3 de noviembre de 2023 a las 2:00 de la tarde para que informara la razón, si alguna, por la cual no se debía disponer de la suspensión del salario que percibe, así como del plan médico o cualquier otro beneficio económico que percibe por las funciones que ejercía. Relativo a lo anterior, el Panel le advirtió que "[d]e no recibir su comunicación sobre este asunto, procederemos a decretar la suspensión inmediata de todo beneficio económico".[1]

Es, pues, evidente que la *Resolución* recurrida no impuso la medida de suspensión de salario y otros beneficios económicos con efectividad inmediata. El Panel **claramente** le concedió un plazo para que el Recurrente expusiera las razones por las cuales no debía suspenderle cualquier beneficio económico que éste percibiera. Solo en el caso en que Irizarry Pabón no compareciera dentro del término concedido era que se le suspendería inmediatamente de salario y de todo beneficio económico.

---

[1] *Véase*, Apéndice del recurso de revisión judicial, pág. 7.

El tracto del caso es claro. Irizarry Pabón presentó el recurso de revisión judicial ante este Tribunal de Apelaciones a la 1:01 p.m. del 3 de noviembre de 2023. Luego, y sin haberlo informado, radicó a la 1:09 p.m. ante la OPFEI la "**Oposición a Suspensión de Salarios**" mediante la cual impugna la medida cautelar impuesta de suspensión sumaria de empleo y argumenta la improcedencia de suspenderle el salario y otros beneficios económicos. Siendo estos los hechos incontrovertidos, todos los argumentos esgrimidos en el recurso de autos sobre la alegada suspensión de salario son prematuros. Nótese que al momento en que el Recurrente radicó el recurso de revisión judicial no era efectiva la suspensión de los beneficios económicos. Para ese entonces, lo único que estaba vigente era una orden de mostrar causa por la cual no se debía hacer efectiva la misma. Cual si fuera poco lo anterior, a tan sólo ocho (8) minutos de haber activado la maquinaria revisora de este Tribunal y **dentro del plazo concedido por el Panel**, Irizarry Pabón presentó su moción con los argumentos por los cuales está convencido de que no procede la suspensión de salario, plan médico y todos los beneficios económicos. Por tanto, nos queda claro que la medida disciplinaria aún no es efectiva y que su procedencia está pendiente de adjudicación final por parte del Panel. Estando pendiente dicha controversia ante dicha entidad gubernamental, cualquier pronunciamiento de este foro sobre la suspensión de salarios, plan médico y otros beneficios económicos sería prematura y al margen de nuestra autoridad en ley para revisarla.

**IV.**

**Por los fundamentos que anteceden, los cuales hacemos formar parte del presente dictamen,** *confirmamos* **la** *Resolución* **del Panel en cuanto a la imposición de la medida cautelar de suspensión sumaria de empleo** y devolvemos el caso a la OPFEI para la celebración de una vista administrativa en la cual se adjudique de forma final la procedencia de dicha medida cautelar. Se *desestima* el presente recurso en cuanto a los planteamientos esgrimidos sobre la suspensión de salarios,

plan médico y u otros beneficios económicos por falta de jurisdicción, al ser éstos prematuros.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones